UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR NIETO,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 14-5544 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

### I. SUMMARY

On July 17, 2014, plaintiff Salvador Nieto ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; July 22, 2014 Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 17, 2008, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 34, 226). Plaintiff asserted that he became disabled on August 2, 1999, due to injuries from a construction accident, problems with his right leg, back, and right shoulder, dislocated disc in back with swelling, anxiety, short temper, memory loss, irritability, insomnia, and depression. (AR 12, 34, 252). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on July 6, 2010. (AR 106-43). On July 28, 2010, the ALJ determined that plaintiff was not disabled through December 31, 2004 (*i.e.*, the date last insured). (AR 34-41).

On February 11, 2012, the Appeals Council granted review, vacated the ALJ's July 28, 2010 decision, and remanded the matter for further administrative proceedings. (AR 12, 146-47).

On August 28, 2012, the ALJ again examined the medical record and also heard testimony from plaintiff (who was represented by counsel), a medical expert, and a vocational expert. (AR 72-104).

On October 30, 2012, the ALJ again determined that plaintiff was not disabled through the date last insured.[1] (AR 12-20). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: sclerosis of the right thigh, status post trauma, degenerative disc disease of the lumbar spine, and right

---

[1] The ALJ stated that her July 28, 2010 decision was adopted and incorporated by reference into, and thus supplemented by, her October 30, 2012 decision. (AR 12).

shoulder impingement syndrome (AR 14); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 15-16); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b) with additional limitations[2] (AR 16); (4) plaintiff could not perform his past relevant work (AR 19); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically Counter Clerk (photo finishing) and Cashier II, as well as Order Clerk (food and beverage industry) and Sticker "[i]f [plaintiff] could perform the work within the [same] residual functional capacity at the sedentary level of exertion" (AR 19-20); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 17).

The Appeals Council denied plaintiff's application for review of the ALJ's October 30, 2012 decision. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the

---

[2]The ALJ determined that plaintiff could (i) lift and carry 20 pounds occasionally and 10 pounds frequently; (ii) stand or walk four hours and sit six hours in an eight-hour work day with an option to sit or stand (switching positions once per hour); (iii) "occasionally perform postural work functions (e.g., climbing, but no ladders, ropes or scaffolds, kneeling, stooping, balancing, crouching or crawling)"; and (iv) perform occasional overhead reaching. (AR 16).

claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch

v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

### B. Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that the ALJ improperly evaluated the credibility of his subjective complaints. (Plaintiff's Motion at 8-10). The Court agrees. As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

### A. Pertinent Law

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ

5

must engage in a two-step analysis." Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find a claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the claimant's statements and testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling 96-7p. Although an ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ may consider in assessing credibility. Burch, 400 F.3d at 681.

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger, 464 F.3d at 972. Accordingly, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported

by substantial evidence, it is not the court's role to "second-guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted).

### B.    Analysis

Here, none of the reasons the ALJ provided for discounting plaintiff's credibility is clear and convincing.

First, the ALJ stated that plaintiff had been given "conservative" medical care because "surgical [treatment] options" had been "discussed" but never "authorized." (AR 17).  Receipt of only conservative treatment can undermine the credibility of a claimant's subjective complaints.  See, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007), cert. denied, 552 U.S. 1141 (2008) (citation omitted).  Here, however, the ALJ's characterization of plaintiff's treatment as "conservative" is not supported by substantial evidence.  For example, the ALJ noted that plaintiff "underwent a series of epidural injections in the lumbar spine after 2004" (*i.e.*, after the date last insured). (AR 17) (emphasis added).  Medical records also reflect, however, that plaintiff was given several epidural steroid injections in 2000, and in February 2001 a catheter was placed in plaintiff's lumbar spine to permit epidural infusion of Marcaine (an anesthetic).  (AR 539, 547-48).  Plaintiff's testimony corroborates that he received multiple epidural injections before the date last insured.  (AR 124-26).  In addition, at the July 6, 2010 hearing, plaintiff testified that his doctor had prescribed him "a lot of pills for the pain" and that plaintiff had taken pain medication "every day," but the medication "[did not] do that much," and made him feel dizzy and have blurred vision. (AR 122).  On the whole, the foregoing is insufficient to support a finding that plaintiff received only "conservative" treatment.  See, e.g., Huerta v. Astrue, 2009 WL 2241797, *4 (C.D. Cal. July 22, 2009) (rejecting ALJ's finding that claimant's pain management treatment, which included "a series of epidural steroid injections," constituted conservative treatment) (citations omitted).  In addition, defendant points to no persuasive authority that would permit the ALJ to

infer that plaintiff received only "conservative" medical care from an administrative decision not to authorize unspecified "surgical options" requested in plaintiff's worker's compensation case.

Second, the ALJ also stated that "[plaintiff] could not provide any cogent reason to explain why he was not approved for surgery." (AR 17). At the July 6, 2010, hearing, however, plaintiff testified that he simply did not know why the requested surgery was not authorized. (AR 132-34). Defendant does not explain how plaintiff's mere lack of knowledge about the basis for an administrative determination made by some unspecified other individual in plaintiff's workers' compensation case reflects any inconsistency in plaintiff's subjective symptom statements or reveals any other clear and convincing reason for concluding that plaintiff has been less than candid in his Social Security case.

Third, the ALJ stated that "it was difficult for [plaintiff] to describe in detail his subjective symptoms and limitations prior to 2005. . . ." (AR 17). The ALJ's findings in this respect, however, are not supported by substantial evidence. The transcript of the July 6, 2010 hearing reflects that before examining plaintiff about his subjective symptoms and limitations, the ALJ explained at length that his questions would be directed to "[plaintiff's] condition . . . from the time [of his] accident until the end of 2004," and that plaintiff needed to limit his testimony to that period of time only. (AR 114-15). Defendant points to nothing in the record which plausibly suggests that plaintiff failed to follow the ALJ's repeated instructions. To the contrary, when the ALJ asked plaintiff to describe the condition of his right leg "at the end of 2004," plaintiff directly responded "I was dragging myself with a lot of pain." (AR 117). When the ALJ followed up "[a]nd you were still having swelling at the time, <u>at the end of 2004</u>[,]" plaintiff answered "[y]eah," and explained "<u>in that year</u> I believe, if I recall . . . [it] was very painful." (AR 118) (emphasis added). When the ALJ reiterated "so I think before you said that <u>in 2004</u> you were still having a lot of pain, a lot of swelling in your right leg

still and that limited your – the amount of walking you could do," plaintiff answered "[y]eah." (AR 119) (emphasis added). Also, when the ALJ asked about "any other problems" plaintiff had besides with his right leg and right shoulder – emphasizing twice that the ALJ "mean[t] through the end of 2004" – plaintiff responded accordingly. (AR 119-20) (emphasis added).

Plaintiff responded similarly to questions about his functional limitations. For example, when the ALJ asked plaintiff how his leg injury initially affected his ability to walk, plaintiff testified that he had swelling as his injury "started" to heal and as a result he "started to have a problem [walking]." (AR 115-16). When the ALJ asked plaintiff "how long did the swelling last," plaintiff sufficiently explained that the swelling would come and go, and would be "well for a week," but would then cause plaintiff difficulty "for another three weeks." (AR 117). The ALJ specifically asked "how was your walking affected at the time?" (AR 118) (emphasis added). Plaintiff responded directly "[m]y walking was . . . to my knowledge I was walking okay, but then I lost my balance. . . my whole leg started burning . . . all the way to my toes. I had to stop walking for –" (AR 118). The ALJ also asked "How long can you – how long could you be on your feet, or how far could you walk at any given time during that period of time?" (AR 118) (emphasis added). Plaintiff answered "I was walking [sic] about, if I recall, between 10 minutes to 15 minutes before I started feel [sic] any pain." (AR 119) (emphasis added). When plaintiff's attorney asked, for the period "[b]etween 1999 after the accident and the end of 2004," how long plaintiff could sit at one time without needing to stand, plaintiff answered that "at that time" he was able to sit for up to half an hour, but as time passed his ability for prolonged sitting decreased to 20 minutes at a time. (AR 130) (emphasis added).

To the extent it appeared that plaintiff was not following the ALJ's repeated instructions to confine his answers to the relevant time period, or that plaintiff was otherwise confused by the ALJ's questions about his subjective symptoms and

9

limits, the ALJ should have cleared up any resulting ambiguities when they arose at the hearing.[3] See. e.g., Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted) (Although plaintiff bears the burden of proving disability, the ALJ has an affirmative duty to assist the claimant in developing the record "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

Finally, since the ALJ did not provide any other clear and convincing reason for discounting plaintiff's credibility, the ALJ's only remaining reason – lack of objective medical evidence to support plaintiff's subjective complaints (AR 17) – is insufficient to support the ALJ's credibility determination. See Burch, 400 F.3d at 681 (Lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony.).

The Court cannot conclude that the ALJ's error was harmless. For example, plaintiff testified, in part, that due to severe pain he could walk only about 10 to 15 minutes before he needed to take a break and rest, and could sit for only half an hour or less at a time. (AR 119, 130). The vocational expert testified, however, that there would be no work available if plaintiff (or a hypothetical individual with the same characteristics as plaintiff) "was off task for 10 percent of every hour due to pain. . . ." (AR 103). Accordingly, the Court cannot "confidently conclude that no reasonable ALJ, when fully crediting the [plaintiff's] testimony, could have reached a different disability determination." Stout, 454 F.3d at 1055-56.

///

---

[3] The transcript from the July 6, 2010 hearing suggests that plaintiff may have responded to several questions about his subjective symptoms and limitations with a present tense verb instead of using the past tense which would likely have been more precise. To the extent plaintiff had difficulty testifying clearly in English, however, the ALJ should have sought clarification of any consequent ambiguity at the hearing, especially considering that, as the ALJ noted, plaintiff had previously needed the assistance of a Spanish language interpreter during a worker's compensation doctor's visit. (AR 108-09).

1  Therefore, remand is warranted to permit the ALJ to reassess plaintiff's credibility.

## V.  CONCLUSION[4]

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[5]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: November 25, 2014

                                             /s/
                               Honorable Jacqueline Chooljian
                               UNITED STATES MAGISTRATE JUDGE

---

[4]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. On remand, however, the Commissioner may wish to reassess plaintiff's residual functional capacity which currently (i) does not contain all of the limitations the ALJ included in the hypothetical question posed to the vocational expert at the hearing (compare AR 95 [hypothetical question at hearing which limited above shoulder activity with the right upper extremity to two to five pounds and precluded work around "unprotected heights"] with AR 16 (residual functional capacity assessment in ALJ's October 30, 2012 decision which did not); and (ii) provides an ambiguous description of plaintiff's postural limitations (AR 16). The Commissioner may also wish to revisit the ALJ's step five analysis which, among other things, appears erroneously to rely on representative occupations that were provided by the vocational expert at the first hearing in response to a different hypothetical question, and which also contains several incorrect job numbers.

[5]When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted). Remand is proper where, as here, "additional proceedings can remedy defects in the original administrative proceeding. . . ." Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (citation and internal quotation marks omitted); see also Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remand is an option where the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).